# IN THE UNITED STATES DISTRCT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, SEVENTH CIRCUIT

| | |
|---|---|
| FREDDY VELEZ | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE CHICAGO PARK DISTRICT | ) |
| | ) |
| Defendants. | ) |

COMES NOW Plaintiff, FREDDY VELEZ, by and through undersigned counsel, and for his cause of action against Defendant The City Of Chicago Park District, states and alleges as follows:

## NATURE OF THE CASE AND THE PARTIES

1. This is a civil action for damages and other relief against Defendant under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and under section 504, 29 U.S.C. § 794, in particular, as well as under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA").

2. Plaintiff Freddy Velez ('Velez") is a resident of Chicago, Illinois.

3. Defendant The City of Chicago Park district is a body corporate and a political subdivision of the City of Chicago.

## JURISDICTION AND VENUE

4. The parties to this action reside in and regularly do business within the jurisdiction of this Court. This Court has jurisdiction under 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2).

5.      On or about May 2, 2016, Velez filed timely charges of disability with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Velez right-to-sue letters o March 8, 2017 for charge numbers 440201603217, copies of which are attached hereto as Exhibit A.

## GENERAL ALLEGATIONS

6.      Velez is a lifeguard and is qualified to be an aquatics instructor and qualified for other employment above and beyond the position as lifeguard. He completed an approximate 20 year training program with the Chicago Park District, including approximately 20 years of work with The Chicago Park District, in order to be qualified in this area. Plaintiff's duties as a lifeguard took place onsite at the Chicago Park District's Facilities. Plaintiff received good evaluations throughout his training programs and careers.

7.      Velez attempted to apply for a position as an aquatics instructor at the Chicago Park District. On or around March, 2001 Velez had an interview with Jamie Anderson, a superior assistant manager with The Chicago Park District who told him acceptance for the position was contingent upon him not being dyslexic and because he was dyslexic he was not permitted to take the classes required to be hired for an advanced position.

8.      In 2005, Velez spoke with Kay Daubert, a superior and aquatics instructor with the Chicago Park District and asked if he purchase study materials to take WSI and LGI examinations to qualify for an employment promotion but Daubert told him he could not take the aforementioned tests due to his dyslexia.

9.      On or around April 2009 Velez spoke with Ann Cordes a superior and aquatics instructor with The Chicago Park District, who told him that he could not be put in charge of a pool because Velez would not be able to teach a class because he had dyslexia.

10.     In 2011 Velez again spoke with Ann Cordes who told him that he could take the WSI class and examination but not an LGI class because was dyslexic.

11.     On or around February 2014, Velez spoke with Eric Fisher, a superior and manager with the Chicago Park District about trying to secure a promotion. At that time, in an effort to deter Velez from getting a promotion, Fischer falsely told Velez that Red Cross was refusing to offer classes that would accommodate dyslexic people.

12.     On or about Adam February 2017 met with Adam a superior at the Chicago Park District who informed him that the EEOC had contacted Chicago Park District Lawyers about Velez' dyslexia and that as a result of this contact, the Chicago Park District claimed it had now resolved the the previous prohibitions on Velez taking classes because of his dyslexia and that Velez could now take the aforementioned classes but as of this date, Velez has not been contacted or about his previous applications or offered any positions.

**CLAIM FOR RELIEF**
**COUNT I**
**(Violation of the Rehabilitation Act)**

13. The Chicago Park District is an entity that receives federal financial assistance and is a covered entity for purposes of § 504 of the Rehabilitation Act. As such, the Hospital is prohibited from discriminating against any "qualified individual with a disability."

14. Velez is, and was at all times pertinent hereto, a qualified individual with a disability. Specifically, he was qualified to perform the essential functions required of a lifeguard and aquatics instructor, with or without a reasonable accommodation.

15. Velez' particular disability is dyslexia, which substantially limits one or more of his major life activities and/or major bodily functions.

16. The Chicago Park District violated section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by either rescinding a conditional or contingent offer to or terminating Velez because of his actual disability, his perceived disability, or his record of impairment.

17. As a result of the Chicago Park District's Actions, Velez has suffered damages, including but not limited to the loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

18. Velez is entitled to his attorneys' fees and costs incurred in this matter pursuant to 29 U.S.C. § 794a.

19. Velez is further to any and all relief permitted under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, including equitable relief.

**COUNT TWO**
**(Violation of the Americans with Disabilities Act)**

20. Velez is a qualified individual within the meaning of 42 U.S.C. § 12111(8) in that he has dyslexia, the Chicago Park District perceives him to have a disability, he has the requisite education to perform and can perform the essential functions of a lifeguard and aquatics instructor, and either desired to hold a position as a lifeguard and aquatics instructor.

21. The Chicago Park District is an "employer" within the meaning of 42 U.S.C. §§ 12111(5) in that it is engaged in an industry affecting commerce and has more than 15 employees for each working day in each of 20 or more calendar weeks in the current and preceding years. Thus, it is also a covered entity within the meaning of 42 U.S.C. § 12111(5).

22. Velez was an employee of the the Chicago Park District within the meaning of 42 U.S.C. § 12111(4). Alternatively, Velez was an applicant for employment.

23. Prior to and at the time that the Chicago Park District either terminated Velez' employment or failed to hire him, Velez was qualified for employment as an aquatics instructor.

24. On the dates alleged above, due to Velez' actual or perceived disability, the Chicago Park District failed to hire and/or promote Velez 42 U.S.C. § 12112(a). Specifically, the Chicago Park District's discriminatory actions included, but were not limited to (1) limiting, segregating, or classifying Velez in a way that adversely affected his opportunities or status because of his actual or perceived disability within the meaning of § 12112(b)(1); (2) utilizing standards, criteria, or methods of administration that have the effect of discrimination on the basis of disability within the meaning of §

12112(b)(3)(A); (3) not making reasonable accommodations for the known physical limitations of Velez, an otherwise qualified individual with a disability who was an applicant or employee, despite the fact that doing so would not impose an undue hardship on the operation of the Chicago Park District's business within the meaning of § 12112(b)(5)(A); (4) denying employment opportunities to Velez by not making reasonable accommodations for his physical impairments within the meaning of § 12112(b)(5)(A); and (5) using qualification standards, employment tests, or other selection criteria that screened out or tended to screen out individuals with disabilities, despite the fact that doing so was not consistent with business necessity, within the meaning of § 12112(b)(6).

25. Velez has been damaged by the Chicago Park District's violation of the ADA inasmuch as Velez has been unable to use his education and training, and has suffered loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

26. Velez is entitled to his attorneys' fees and costs incurred in this matter pursuant to 42 U.S.C. § 12205.

27. Velez is further entitled to any and all relief permitted under the ADA, 42 U.S.C. § 12117(a), including equitable relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for damages in an amount to be determined at trial, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems just and proper.

Furthermore, Plaintiff specifically prays that Defendant be enjoined from failing or refusing to provide sufficient remedial relief to make whole Plaintiff for the losses he has suffered as a result of the discrimination against him as alleged in this Complaint, including offering Plaintiff full-or part-time employment, at his option, with any necessary reasonable accommodation, for which he is qualified, at the average rate he would have earned had his conditional or contingent offer not been rescinded or his employment not terminated, plus retroactive seniority, payment of back pay with interest, pension, and related benefits; and take other appropriate nondiscriminatory measures to overcome the effects of the discrimination.

### JURY DEMAND

Plaintiff further demands a trial by jury on all issues in this matter. Dated this 19th day of September, 2011.

Respectfully submitted,
SS/: Edwin Belz
4407 North Elston Avenue
Chicago, Illinois
60630
773-282-9129